518 P.2d 120

**STATE of Arizona, Appellee,**

v.

**Joshua H. THOMPSON, Appellant.**

**No. 2708.**

Supreme Court of Arizona,
En Banc.

Jan. 25, 1974.

Gary K. Nelson, Atty. Gen., by Cleon M. Duke and Grove M. Callison, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Paul J. Prato, Former Deputy Public Defender, Phoenix, for appellant.

HAYS, Chief Justice.

Defendant, Joshua Thompson, was indicted for the crimes of burglary, assault with intent to commit murder, and second degree robbery. He was given concurrent sentences of nine to ten years, sixty years to life, and twenty years to life, respectively, after a jury found him guilty of all three crimes.

The facts clearly showed that defendant broke into an octogenarian's dwelling house, beat her almost to death and ran off with some money and jewelry, when he was surprised by the victim's son-in-law. He was caught with the loot on him.

His attorney's brief raises only one issue —namely, whether it was error for the

court to fail to instruct the jury that robbery and burglary require a specific intent. No issue is raised as to the assault count.

A reading of the transcript discloses that counsel's position is not well taken as to the burglary charge, since the court instructed the jury that:

"A person entering a dwelling house of another person with the intent to commit grand or petty theft or any felony therein, is guilty of burglary. . . . The essence of burglary is entering a place with such larcenous intent . . ."

The instruction as to the robbery charge was not so specific. It told the jury that:

"Robbery is the felonious taking of personal property in the possession of another, from his person . . . and against his will, accomplished by means of force and fear . . ."

In addition, the court gave a general instruction to the effect that:

"To constitute any crime, and in this case specifically, the charge of robbery or burglary, there must be a combination of an act forbidden by law and intent to do the act. Intent may be inferred from the defendant's voluntary commission of an act forbidden by law. . . ."

■ The instruction repeats in haec verba the definition of robbery given in A.R.S. § 13–641, but we have recognized that an element of the crime is an intent to deprive the owner permanently of the property taken. However, we have held that the failure to give an instruction on the need for specific intent in the crime of robbery was not fundamental error when there is no issue as to the intent with which the defendant acted. State v. Evans, 109 Ariz. 491, 512 P.2d 1225 (1973), State v. Gomez, 102 Ariz. 432, 432 P.2d 444 (1967). The foregoing rule applies in this case.

■ Although this disposes of the only issue raised by defendant's counsel, defendant has filed his own brief on appeal, in propria persona, in which he raises six additional issues. He first claims that the

trial court erred in telephoning defendant's psychiatrist to obtain privileged information to pass on to the prosecutor. This call arose after the court, over the state's objection, granted defendant the right to a medical examination to ascertain his mental condition. Testimony was heard from three Phoenix psychiatrists. Defendant requested that the state pay for bringing to the trial the prison psychiatrist in West Virginia who had examined defendant when he was an inmate there. The court refused to authorize the expense, but with permission of defendant's attorney, called the doctor, but failed to elicit much useful information. Following that, the record shows that defense counsel stated to the court:

"I'd like to have Mr. Thompson brought into chambers and have the record indicate his concurrence in presenting no doctor and presenting no psychiatrists' testimony, and in effect, abandoning the insanity defense."

The court indicated that if the defense rested without calling any more doctors, that would sufficiently indicate defendant's concurrence.

■ Defendant secondly argues that the court erred in allowing him only ten minutes to examine the tangible evidence against him. The record shows that prior to the trial, *defendant's attorney* was permitted to examine the evidence. During the trial, defense counsel asked leave for *defendant himself* to examine the same evidence, on the theory that defendant might notice something significant overlooked in the examination made by his attorney. The evidence referred to was the stolen property, defendant's bloodstained clothes worn on the day of the crime, and a tape recording of defendant's interrogation, which defense counsel had already been permitted to hear. The court granted defendant's request, except as to the tape, but refused to let defendant handle the evidence. We see no error here.

■ Defendant's next point is that the court erred in preventing him from being

present when the tape of his interrogation "was being argued in chambers for admission in evidence." The facts as to the tape are similar to those regarding the bloodied clothes. Defense counsel had already heard the tape and requested that defendant himself also be allowed to listen to it. The state objected because (1) they had not yet decided to use the tapes, and (2) it would require moving defendant to the public defender's office or the tapes to the jail, and since defense counsel had already heard the tape and made notes from it to use in consulting with his client, nothing would be gained. Defendant argues that Criminal Rule 231(A)(5), 17 A.R.S., was violated by excluding him from the chambers while the request was being argued. The Rule provides that defendant shall be present "when evidence is addressed to the court out of the presence of the jury for the purpose of laying the foundation for the introduction of evidence before the jury." The Rule is obviously inapplicable. Defendant also argues that the tape might have held information pertinent to his defense of insanity, but that argument has no validity because that defense was abandoned.

Defendant's next argument is that he was denied the right to be present when the instructions were being settled. His argument is that this was the time when desired instructions must be requested, and those not desired must be objected to, and that by not being present he was deprived of the right to request instructions. But his counsel was there and did request instructions. Also, defendant was present when the instructions were read to the jury, and neither he nor his counsel made any objections.

Defendant argues that the court erred in failing to instruct the jury on the issue of his sanity. As we have already indicated, that issue was abandoned by the defense and no such instruction was necessary.

Lastly, the defendant argues that in the course of the court's instructions the

court said: "It is not necessary to establish that the defendant knew his act was a violation of the law." This, claims defendant, was tantamount to instructing the jury to disregard the defense of insanity. Taken in context with the rest of the instructions, we do not believe that the instruction given was improper. However, even if it eliminated the defense of insanity, as claimed by defendant, there would be no error because the defense of insanity had been abandoned.

In addition to examining the briefs in this case, we have carefully read all nine volumes of the transcript, searching for fundamental error, and have found none.

The judgment and sentence of the Superior Court are affirmed as to all counts.

CAMERON, V. C. J., and STRUCK-MEYER, LOCKWOOD and HOLOHAN, JJ., concur.